**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **e-LYNXX CORPORATION,** | : | **CIVIL ACTION NO. 1:10-CV-2535** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Conner)** |
| **v.** | : | |
| **INNERWORKINGS, INC., RENT-A-CENTER, INC., DR. PEPPER SNAPPLE GROUP, INC., R.R. DONNELLEY & SONS CO., NEWLINENOOSH, INC., THE STANDARD REGISTER CO., AND CIRQIT.COM, INC.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

Presently before the court in the above-captioned matter is plaintiff e-LYNXX Corporation's ("e-LYNXX") motion to alter or amend judgment (Doc. 308), arising from the court's memorandum and order granting summary judgment in favor of defendants InnerWorkings, Inc. ("InnerWorkings") and Cirqit.com, Inc. ("Cirqit"). (Doc. 302). For the reasons set forth below, the court will deny the motion.

## I. Factual Background and Procedural History

In the instant patent infringement action, plaintiff e-LYNXX alleges that defendants InnerWorkings and Cirqit infringed U.S. Patent No. 7,451,106 (the "'106 patent") and U.S. Patent No. 7,788,143 (the "'143 patent"). (See Doc. 117). Both the '106 patent and the '143 patent cover procurement systems for competitive bidding on customized goods and services. The patents share the same specification, which

describes the invention as "[a]n apparatus and method for selecting a lowest bidding vendor from a plurality of vendors of a customized good or service." '106 patent, abstract; '143 patent, abstract. The invention seeks to streamline the process for procuring customized goods or services by reducing the search costs for buyers.

Defendant InnerWorkings provides global print management and promotional products to corporate clients in a variety of industries. InnerWorkings procures, manages, and delivers print materials for its clients through a system known as Print Procurement Manager 4 ("PPM4"), which contains approximately 9,000 vendors of print products. InnerWorkings' clients do not have direct access to the PPM4 system. The clients communicate the specifications of their proposed jobs to print procurement managers at InnerWorkings, who in turn input this information into the PPM4 system. The PPM4 system then compares job data against the entire database of vendors in order to identify the best vendor for a particular job.

Defendant Cirqit developed and sold the Order-It system, which allows buyers to submit to vendors invitations to bid on contracts for customized paper goods, such as letterhead and envelopes. Unlike PPM4, buyers have direct access to the Order-It system and may solicit bids from vendors who have submitted information to the system regarding their type of business and available goods.

On December 14, 2010, e-LYNXX filed the instant action against several defendants, including InnerWorkings and Cirqit, alleging infringement of claims

13–16 and 18 of the '106 patent, and claims 1 and 2 of the '143 patent.[1] (See Doc. 117). In August and September 2011, the parties filed briefs regarding their respective claim constructions, and defendants moved for summary judgment on the ground of patent invalidity. (Docs. 112, 113, 125, 126). On October 11, 2011, the court heard oral argument on summary judgment and held a claim construction hearing pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). (Doc. 163). On September 27, 2012, the court issued a memorandum and order denying the motion for summary judgment and construing the disputed claim terms. (Doc. 205). Cirqit and InnerWorkings subsequently moved for summary judgment on the claims of patent infringement. (Docs. 232, 235). On July 25, 2013, the court granted summary judgment in favor of Cirqit and InnerWorkings. (Docs. 302, 303, 304). On August 22, 2013,[2] e-LYNXX filed the instant motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). (Doc. 308). The motion has been fully briefed and is ripe for disposition.

---

[1] e-LYNXX alleges infringement of independent claim 13 and dependent claims 14, 15, 16, and 18 of the '106 patent, and independent claims 1 and 2 of the '143 patent. "An independent claim is completely self-contained. A dependent claim refers back to an earlier claim and is considered to include all of its own limitations as well as those of the referenced claim." HERBERT F. SCHWARTZ AND ROBERT J. GOLDMAN, PATENT LAW AND PRACTICE § 2.III.B.1 (7th ed. 2011). To infringe a dependent claim, one must necessarily infringe the independent claim to which it refers. Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).

[2] e-LYNXX timely filed the motion to alter or amend judgment as Docket No. 307. At the request of the Clerk of Court, e-LYNXX re-filed the instant motion and supporting brief as two separate documents on August 26, 2013. (Docs. 308, 309).

## II. Legal Standard

Motions for reconsideration under Federal Rule of Civil Procedure 59(e) serve primarily to correct manifest errors of law or fact in a prior decision of the court. See United States v. Fiorelli, 337 F.3d 282, 288 (3d Cir. 2003); Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Under Rule 59(e), "a judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe *ex rel.* Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

However, "[a] motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (internal citation and quotations omitted). Furthermore, a party may not utilize a Rule 59(e) motion to introduce new evidence or arguments that could have been raised prior to judgment, or "'simply change[ ] theories and [try] again,' thus giving [the movant] 'a second bite at the apple.'" Prusky v. Prudential Ins. Co. of Am., 44 F. App'x. 545, 548 n.1 (3d Cir. 2002) (quoting Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir.1995) (alterations in original)); McDowell Oil Serv., Inc. v. Interstate Fire & Cas. Co., 817 F. Supp. 538, 541 (M.D. Pa. 1993). Reconsideration of a judgment is an

extraordinary remedy, and the court grants such motions sparingly. D'Angio v. Borough of Nescopeck, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

It follows from the remedial purpose of a Rule 59(e) motion that the standard of review relates back to the standard applicable in the underlying decision. See Fiorelli, 337 F.3d at 288. When a motion to alter or amend judgment challenges the court's decision to grant or deny summary judgment, Federal Rule of Civil Procedure 56 controls the analysis. Relief may be granted if the materials related to the summary judgment motion—including the pleadings, discovery materials, and affidavits—"show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court should consider all facts in the light most favorable to the non-moving party to determine whether a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 250-57; Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).

Pursuant to 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention" during the term of the patent, commits patent infringement. The larger question of infringement can be distilled to two discrete issues: what is the thing that was patented, and has the accused infringer made that thing? See ROBERT L. HARMON, ET AL., PATENTS AND THE FEDERAL CIRCUIT 463 (10th ed. 2011). To be liable for direct infringement of a method claim, an alleged infringer "must perform all the steps of the claimed

method, either personally or through another acting under his direction or control." Akamai Tech., Inc. v. Limelight Networks, Inc., 692 F.3d 1301, 1307 (Fed. Cir. 2012). The plaintiff must prove by a preponderance of the evidence that "the accused device contains each limitation of the asserted claim(s)." Bayer AG v. Elan Pharm. Research Corp., 212 F.3d 1241, 1247-48 (2000). There is no literal infringement, as a matter of law, "[i]f any claim limitation is absent from the accused device." Id.; see also HARMON, ET AL., at 467-68 (noting that the Federal Circuit has adopted the "All Limitations Rule," meaning that to establish infringement, "every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent").

## III. Discussion

e-LYNXX raises issues unique to each defendant in its motion to alter or amend the court's judgments in favor of InnerWorkings and Cirqit. The court will therefore address the issues for each defendant separately.

### A. InnerWorkings' Summary Judgment

In its motion for summary judgment, InnerWorkings' arguments centered on the court's construction of the claim term "buyer." During claim construction, the court rejected e-LYNXX's proposed construction that "buyer" means simply "one who makes a purchase." (Doc. 205 at 9). The court reasoned that the claims clearly intended to distinguish between an intermediary acting on behalf of a buyer and a buyer as the ultimate purchaser. (Id. at 9-10). Accordingly, the court adopted the defendants' proposed construction and construed "buyer" to mean "the ultimate

purchaser of customized goods or services." (Id. at 9-11). Applying this construction in the context of InnerWorkings' Rule 56 motion, the court concluded that the PPM4 system does not include two elements of e-LYNXX's patents: first, the buyer does not have access to PPM4 to procure bid jobs through electronic communications, and second, PPM4 does not associate a pool of vendors with the buyer. (Doc. 302 at 20).

As to the first element, the parties did not dispute that a buyer cannot access the PPM4 system to submit an electronic communication to identify the vendors in the buyer's vendor pool. (See id.) e-LYNXX argued that the court's construction of "electronic communication" indicated that a third party may send electronic communications to the PPM4 system on behalf of a buyer. (See id. at 21-22). However, claim 13 of the '106 patent provides that such information identifying the vendors in a buyer's vendor pool be communicated through an electronic communication "from any buyer using the system." '106 patent, col. 21, ll. 11-12. Contrary to e-LYNXX's assertions, the court concluded that the surrounding language of claim 13 requires such electronic communications to originate from a buyer. (Doc. 302 at 21-22). Moreover, the prosecution history of the '106 patent indicates that the patentee surrendered its claim to a system that is not accessed directly by a buyer. (See id. at 23-25).

The PPM4 system also does not infringe the '143 patent because it does not associate a pool of vendors with a buyer. (See id. at 25-28). Claim 1 of the '143 patent describes an electronic communication from or on behalf of a buyer

"identifying a plurality of vendors for inclusion in a pool of vendors associated with the buyer to potentially receive a job solicitation." '143 patent, col. 19, ll. 1-5. In its claim construction order, the court construed the term "a pool of vendors associated with said buyer" to mean "two or more vendors associated with a buyer that can potentially receive a job solicitation from that buyer." (Doc. 205 at 54). e-LYNXX argued that the court's construction did not mandate that different buyers have access to unique or different pools of vendors. (See Doc. 302 at 27). In the PPM4 system, the entire database of vendors becomes associated with a buyer whenever a comparison is conducted. (See id. at 28). However, the court concluded that vendors are not "associated" with a buyer unless a subset of vendors is drawn from the database before running a job specification comparison. (Id.) For these reasons, the court granted InnerWorkings' motion for summary judgment.

In the instant motion, e-LYNXX seeks to vacate the court's judgment in order to correct clear errors of law or fact. e-LYNXX first asserts that the court incorrectly assumes that InnerWorkings' clients, and not InnerWorkings, are the "buyers." (Doc. 309 at 3). For the first time, e-LYNXX attempts to create a distinction between intermediaries in a resale transaction and intermediaries in a principal-agent relationship with the buyer. (See id. at 5-7; Doc. 317 at 5-8). e-LYNXX argues that the court intended to exclude from the term "buyer" only intermediaries in a principal-agent relationship with a buyer. (Doc. 317 at 7-8). In contrast, intermediaries in a resale transaction, such as InnerWorkings, are the ultimate purchasers because the supplier-intermediary transaction takes place

within the infringing PPM4 system, whereas the intermediary-client resale transaction is external to the PPM4 system. (Doc. 309 at 5-7). Specifically, InnerWorkings submits the job specifications, enters into the contract with the vendor, and bears sole liability for the contract. (Id. at 7-8; Doc. 317 at 7-8). Any subsequent transaction with the client is unrelated to the vendor or the PPM4 system. (Doc. 309 at 7-8).

Clearly, e-LYNXX has waived this argument. Generally, a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) "may not be used to present a new legal theory for the first time or to raise new arguments that could have been made in support of the original motion." Sullenberger v. Jobe, No. 06-430, 2008 WL 2705216, at *1 (W.D. Pa. July 8, 2008); Hill v. Tammac Corp., No. 1:05-CV-1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006). In its opposition to the motion for summary judgment, e-LYNXX alleges in a conclusory manner that InnerWorkings is the "buyer" because it has "complete, final, and ultimate contractual liability to the vendors." (Doc. 266 at 6). At no point did e-LYNXX challenge the claim construction of the term "buyer," nor did e-LYNXX argue any distinction between intermediaries in the application of the term "buyer" to undisputed facts. Thus, e-LYNXX's instant motion represents precisely the type of procedural maneuvering that is ineffectual under Rule 59(e). See Bhatnagar, 52 F.3d at 1231 (stating that parties may not utilize motions for reconsideration as opportunities to change theories or receive "a second bite at the apple"). The court will neither consider nor reconsider e-LYNXX's delayed distinction between

intermediaries in order to challenge the court's construction and application of the term "buyer."[3]

E-LYNXX also seeks to alter or amend the court's judgment regarding claims 1 and 2 of the '143 patent. e-LYNXX asserts that all of the vendors in the PPM4 database comprise the "a pool of vendors associated with" InnerWorkings

---

[3] In the exercise of caution, the court is compelled to note that e-LYNXX's argument is without merit. e-LYNXX argues that InnerWorkings is the "ultimate purchaser" within the infringing system and therefore fits into the court's construction of the term "buyer." (See Doc. 309 at 5-8). In reality, e-LYNXX seeks to circumvent the court's construction by creating a limiting distinction between intermediaries. As previously discussed, the court rejected e-LYNXX's proposal that a "buyer" means simply "one who makes a purchase." (Doc. 205 at 9). The court observed that the term "buyer" is often preceded by claim language distinguishing an intermediary from the ultimate purchaser. (Id.) A broad construction of buyer would swallow any distinction between a "buyer" and one who purchases "from or on behalf of" a buyer. (Id. at 10). Moreover, the specification supports the distinction between buyer and intermediary because it indicates that job data for soliciting bids is based on a buyer's preferences, as opposed to any intermediary acting on behalf of a buyer. (Id. at 10-11). Therefore, the court construed "buyer" to mean "the ultimate purchaser of customized goods or services." (Id. at 9).

e-LYNXX provides no evidence whatsoever to support a distinction between an intermediary in a resale transaction and an intermediary in a principal-agent relationship with a buyer. Neither the claims nor the specification suggest that actions "from or on behalf of" a buyer require that an intermediary possess binding authority over a buyer as an agent. (See id. at 9-10). There is also no indication that an intermediary with sole contractual liability to the vendors does not act "from or on behalf of" a buyer. In either case, the parties do not dispute that the job data originates from the buyer, not the intermediary. (See Doc. 316 at 6-7; Doc. 317 at 12-13). Such a distinction between intermediaries merely creates an improper limitation on the claims and seeks to circumvent the claim construction of "buyer." See Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed Cir. 2004) ("[T]he claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion of restriction.'") (quoting Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1327 (Fed. Cir. 2002)). For all of these reasons, e-LYNXX's delayed attempt to challenge the court's construction of "buyer" is unavailing.

because InnerWorkings is the only buyer in the system. (Doc. 309 at 9). The court need not consider this argument for two reasons. First, e-LYNXX's argument is merely reargument. The court has already determined that InnerWorkings is not a "buyer." The court concluded in its claim construction memorandum that a "buyer" is the "ultimate purchaser of goods or services." (Doc. 205 at 9). In its summary judgment memorandum, the court applied this construction to find that InnerWorkings' clients, and not InnerWorkings, are the buyers in the PPM4 system. (See Doc. 302 at 20-22). As the court previously stated, e-LYNXX may not simply raise a new argument pursuant to Rule 59(e) to challenge the court's prior decisions. See Hill, 2006 WL 529044, at *2 (stating that Rule 59(e) motions "may not be used to raise new arguments . . . that could have been raised prior to the entry of judgment").

Second, e-LYNXX fails to present any evidence of a clear error of law or fact. In its opposition to the motion for summary judgment, e-LYNXX stated that the court's construction for "a pool of vendors associated with said buyer" does not "contain a requirement that there must be unique vendor pools exclusively associated with a single buyer." (Doc. 266 at 14-15). Nevertheless, "certified vendors form a pool of vendors containing only certified suppliers which are selected out of the larger set of all suppliers contained in PPM4." (Id. at 16). In this motion, e-LYNXX again states that "all of the suppliers with vendor records stored in the PPM4 system are associated with InnerWorkings." (Doc. 309 at 9). "Even if the Asserted Patents do 'require that a subset of vendors be drawn from a database

before running a job specification,' . . . . the PPM4 systems selects vendors from *only* the pool of certified vendors." (Id. at 10) (internal citation omitted).

The court previously concluded that there was no genuine factual dispute that the PPM4 system does not compare job specifications to anything less than the entire database of vendors. (Doc. 302 at 28). For this reason, the PPM4 system does not satisfy the requirement that a subset of vendors be"associated" with a buyer before running a comparison. (Id.) The court finds that e-LYNXX fails to provide any evidence of a "clear error of fact or law" and merely seeks to relitigate the court's prior conclusions. Therefore, the court will deny e-LYNXX's motion to alter or amend judgment on claims 1 and 2 of the '143 patent.

**B. Cirqit's Summary Judgment**

The court granted summary judgment in favor of Cirqit because the Order-It system does not store or evaluate a potential vendor using "vendor capability data" as required by both the '143 and '106 patents. (Id. at 30-32). The court construed the term "vendor capability data" to mean "two or more capabilities of a vendor to manufacture or produce a customized good or service and excluding the vendor's name, contact information, payment preferences, type of business and goods sold." (Doc. 205 at 16-18). Applying this construction, the court found that the only information the Order-It system uses to invite bids from vendors relates to a vendor's type of business and goods sold. (See Doc. 302 at 31-32).

e-LYNXX presently moves to alter or amend summary judgment because the court erroneously assumes that the patentee's disclaimer of "goods sold" from

"vendor capability data" includes both goods ready to be sold and goods to be produced. (Doc. 309 at 3-4). This argument seeks to relitigate the court's construction and application of the term "vendor capability data," and the court rejects it.

In the prosecution history, the patentee unequivocally disavowed "goods sold" from a vendor's "plurality of capabilities" in order to distinguish the application from U.S. Patent No. 5,794,207 (the "Walker '207 Patent"). (See Doc. 205 at 16-18). As a result, the court adopted defendants' construction for "vendor capability data" with an express disclaimer for "goods sold." (Id.) The court notes that, during the claim construction phase, e-LYNXX did not request that the court construe the term "goods sold," nor did e-LYNXX assert a distinction between "goods sold" from inventory and goods to be produced in accordance with a buyer's specifications.

e-LYNXX first asserted a distinction between "goods sold" and goods to be produced in its opposition to summary judgment. e-LYNXX posited that, under the Walker '207 Patent, "goods sold" is a description of an existing product or service offered by a vendor, such as an airline ticket or rare coins. (Doc. 260 at 15). Accordingly, the vendor information within the Order-It system is not akin to "'goods sold' for which a product already exists, but rather vendor capabilities for producing a particular type of product or product feature based on their equipment." (Id. at 17). In essence, e-LYNXX sought to avoid the "goods sold"

exclusion from "vendor capability data" by equating goods to be produced with a vendor's capability to produce such goods.

The court explicitly rejected this argument because it is inconsistent with the specification. (See Doc. 302 at 31-32). The patent specification includes examples of "vendor capability data," such as printing four colors in one pass or ink matching, which clearly distinguish "vendor capability data" from "goods sold." See '143 patent, fig. 10. The court found that the Order-It system does not maintain any information similar to the examples of "vendor capability data." It stores only information regarding the types of goods that a vendor sells, such as product catalogs, envelopes, letters, cards, posters, and stationary and business cards. (See Doc. 302 at 31-32). Thus, Cirqit's Order-It system does not satisfy an element of the '106 and '143 patents to be liable for patent infringement.

In the motion at bar, e-LYNXX modifies its previous argument and challenges the court's construction of the term "vendor capability data." e-LYNXX now asserts that goods to be produced are separate and distinct "product categories," not "goods sold." (Doc. 309 at 12-13). Because e-LYNXX did not specifically disclaim "product categories" in the prosecution history, such "product categories" fall within the court's construction of "vendor capability data." (Id.) The record demonstrates that neither party requested claim construction on "product categories" or "goods sold" despite significant argument on the term "vendor capability data." As the court discussed *supra*, e-LYNXX may not rely on a motion to alter or amend judgment to change theories and take "a second bite at

the apple." Bhatnagar, 52 F.3d at 1231; see also Ogden, 226 F. Supp. 2d at 606. e-LYNXX's modified argument is clearly another attempt to alter the court's construction of the term "vendor capability data" and prevent its application as construed to the instant matter. Accordingly, the court rejects e-LYNXX's motion to alter or amend judgment in favor of Cirqit.[4]

## IV. Conclusion

For the above reasons, the court will deny e-LYNXX's motion to amend or alter the court's judgments in favor of InnerWorkings and Cirqit.

An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: February 6, 2014

---

[4] In the exercise of caution, the court notes that, contrary to e-LYNXX's assertions, there is no viable distinction between goods ready to be sold and goods to be produced. e-LYNXX relies heavily on the Walker '207 Patent for its contention that "goods sold" clearly refers to goods that are ready to be sold from inventory. (See Doc. 309 at 11-12). However, e-LYNXX provides no support for such a limited construction of "goods sold" from either the prosecution history of the '106 and '143 patents, or the intrinsic evidence related to the Walker '207 Patent. In fact, the language of the Walker '207 Patent closely mirrors the asserted patents. The Walker '207 Patent states that "the buyer selects the subject of the goods he wants to purchase by selecting from a list of possible subjects . . . . [which] might include airline tickets, hotel rooms, rental cars, insurance, mortgages, clothing, etc." Walker '207 Patent, col. 16, ll. 3-7; (Doc. 309 at 12 n.4). For the patents-in-suit, e-LYNXX asserts that the buyer must add an "item" to the job by selecting from among the options in a drop down list before specifying "vendor capabilities data." (Doc. 309 at 14; see '106 Patent, figs. 5, 10). Neither the Walker '207 Patent's description of goods nor the '106 Patent's explanation of adding an "item" suggests that "goods sold" is limited to a good or item ready for sale at the time of order.